MALONEY, Appellee and Cross–Appellant,

v.

MALONEY, Appellant and Cross–Appellee.

[Cite as *Maloney v. Maloney,* 160 Ohio App.3d 209, 2005-Ohio-1368.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19985.

Decided March 25, 2005.

210

214

John D. Smith and Michael P. Larez, for appellee.

John M. Ruffolo, for appellant.

_____

GRADY, Judge.

{¶ 1} This is an appeal and a cross-appeal from a final judgment and decree of divorce. The issues presented on appeal are confined to the domestic relations court's division and distribution of properties or interests therein that the parties owned when their marriage terminated.

{¶ 2} Linda and Joseph Maloney were married on September 20, 1991. Both brought considerable assets to the marriage. Joseph's[1] included a partnership interest in the Brower Insurance Company, common stock, accounts of deposit, and real property. Linda's included accounts of deposit and a beneficial interest in a family trust. Both parties earned incomes during the marriage, and the value of their assets increased as well.

{¶ 3} Joseph and Linda agreed as to how certain of their properties would be divided, and the trial court adopted their agreement. Their contentions on appeal concern only those other properties or interests the court necessarily divided on its own findings, which were incorporated into the final decree from which Joseph appealed and Linda cross-appealed.

*Joseph Maloney's Appeal*

{¶ 4} The first assignment of error reads:

{¶ 5} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred when it awarded the wife the sum of $78,370.00 of husband's interest in Brower Insurance Company."

{¶ 6} The Brower Insurance Company ("Brower") is an insurance brokerage partnership. Joseph is employed by Brower as an agent-salesperson, for which he is paid commissions on the sales he makes. He also owns a partnership interest. Joseph receives dividends from Brower on its profits in proportion to his partnership interest.

{¶ 7} The trial court found that the value of Joseph's seven percent partnership interest in Brower when the parties were married in 1991 was $455,000 and that the value of his 8.38 percent interest in Brower when the marriage terminated by the parties' separation in 2000 was $611,174. The difference, $156,174, was determined to be marital property, and on that basis, the court divided it equally,

_____

1. For clarity and convenience, the parties are identified by their first names.

each party to receive $78,370. Joseph was ordered to pay that amount to Linda. He was awarded the 1991 value of his partnership interest as his separate property.

{¶ 8} Whether property is marital or separate is a question committed to the sound discretion of the domestic relations court, and its determinations will not be reversed on appeal absent a finding that the trial court abused its discretion. *Neville v. Neville*, 99 Ohio St.3d 275, 2003–Ohio–3624, 791 N.E.2d 434. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. The abuse of discretion standard is satisfied if there is no sound reasoning process that would support the trial court's decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 553 N.E.2d 597.

{¶ 9} The increase in the value of Joseph's partnership interest in Brower during the marriage is attributable to two factors. One is his purchase of additional partnership shares, which increased his share of the partnership from a seven percent interest at the time of marriage to an 8.38 percent interest when the parties separated. The other factor was the increase in the capitalized value of each one percent partnership share in Brower, including Joseph's, from $65,000 per share when the parties married in 1991 to $73,0000 per share when they separated in 2000.

{¶ 10} Joseph owned a Touchstone money market account ("Touchstone Account") when the parties were married in 1991. The court found that the account balance was then $100,210. Joseph offered evidence showing that during the marriage, he had deposited dividends he received as a Brower partner in the Touchstone Account and that he used those proceeds along with the remainder of the account's 1991 premarital balance to purchase the additional 1.38 percent partnership share in Brower that he acquired during the marriage.

{¶ 11} Joseph argues that the additional interest in Brower he acquired is his separate property because it was purchased (1) with funds from the premarital balance in the Touchstone Account, which is his separate property, and (2) with dividends from Brower representing passive income on and appreciation of his premarital partnership interest, which is likewise his separate property. Therefore, according to Joseph, the trial court abused its discretion when it found that the 1.38 percent additional interest in Brower he acquired during the marriage is marital property and then divided its value, requiring him to pay Linda $78,370 for the one-half interest the court awarded her.

{¶ 12} Any "[p]assive income and appreciation acquired from separate property by one spouse during the marriage" is the separate property of that spouse. R.C. 3105.171(A)(6)(a)(iii). "Passive income" means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse. R.C. 3109.171(A)(4). Therefore, "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of *either or both of the spouses* that occurred during the marriage" is marital property. (Emphasis added.) R.C. 3105.171(A)(3)(a)(iii). That section "unambiguously mandates that when either spouse makes a labor, money, or in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property." (Emphasis omitted.) *Middendorf v. Middendorf* (1998), 82 Ohio St.3d 397 at 400, 696 N.E.2d 575.

{¶ 13} Joseph is not only a partner in Brower. He is also one of a number of agent-salespersons that Brower employs. John Barron, one of the other Brower partners, testified that Joseph's effort, skill, and productivity in selling insurance generated profits for Brower and contributed to the increased value of the partnership. That effort is consistent with Brower's requirement of each partner that he "devote his time and effort to advancing and rendering profitable the interest of said partnership."

{¶ 14} It appears from the record that the January 1991 balance in Joseph's Touchstone Account was depleted through other transactions and that Joseph necessarily applied dividends he received from Brower and deposited into the Touchstone Account to purchase his additional 1.38 percent interest in Brower. Though the record shows exactly the extent of Joseph's interest in the partnership that generated the dividends and the amount of those dividends, it does not reflect the extent of his contribution to Brower's profitability from which the dividends were paid. Joseph was not the only salesperson partner who generated profits, but their relatively small number—fewer than ten—supports a conclusion that Joseph's contribution was not merely nominal, but tangible.

{¶ 15} The trial court reasonably could find that the Brower dividends Joseph deposited into the Touchstone Account and that he used to purchase his additional partnership interest, as well as the increase in the capitalized value of the partnership shares Joseph purchased with those dividends, were derived from profits realized by Brower which were, at least in part, attributable to Joseph's own labor and therefore marital property that the court was required to divide between Joseph and Linda. *Middendorf.* We find no abuse of discretion in the court's classification and division of the additional interest Joseph acquired in Brower during the marriage as marital property, which supports the court's award to Linda of her one-half share of the value of that marital property.

{¶ 16} The first assignment of error is overruled.

{¶ 17} The second assignment of error follows:

{¶ 18} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred when it concluded that Cincinnati Financial and Citizens Utilities stocks are the only non-marital property of the husband in his Morgan Stanley account."

{¶ 19} Joseph owned a Morgan Stanley common stock account when the parties separated. The account included stocks of Cincinnati Financial Corporation and Citizens Utilities that Joseph owned prior to marriage. The court awarded him those stocks as his separate property. The Morgan Stanley account also includes stocks in Oracle Corp., Reynolds & Reynolds, and Glaxco Corp., which Joseph purchased during the marriage. The court found that those stocks are marital property and ordered their value divided. Joseph argues that the trial court erred because these stocks are traceable to his separate property.

{¶ 20} Any property or an interest therein that either spouse owns when the marriage terminates is presumed to be marital property. R.C. 3105.171(A)(3)(a). Marital property must be divided per R.C. 3105.171(B) and (C), unless it is one of the seven forms of separate property identified in R.C. 3105.171(A)(6)(a), which must instead be disbursed to the spouse who owns it. R.C. 3105.171(D).

{¶ 21} Property is classified as separate by R.C 3105.171(A)(6)(a)(i) through (vii) according to the way in which it was acquired. The form in which the property is held is generally immaterial. However, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

{¶ 22} "Traceable" is an adjective. As it is used in R.C. 3105.171(A)(6)(b), traceable refers to evidence demonstrating a connection between property currently owned and some antecedent article of separate property. Such proof overcomes the effect of commingling, by which separate property may be "transmuted" into marital property.

{¶ 23} A party who claims that property is traceable to his separate property has, as with any separate property claim, the burden to prove that proposition by a preponderance of the evidence. *Peck v. Peck* (1994), 96 Ohio App.3d 731, 645 N.E.2d 1300; *Tupler v. Tupler* (Jan. 12, 1994), Hamilton App. Nos. C–920852 and C–920887, 1994 WL 6003. Oral testimony as evidence, without corroboration, may or may not satisfy the burden. *Fisher v. Fisher* (Dec. 23, 2004), Montgomery App. No. 20398. Because traceability presents a question of fact, we must give deference to the trial court's findings, and the court's decision on the matter will not be reversed as against the manifest weight of the

evidence when it is supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 24} Joseph purchased the Glaxco stock in February 1993 with funds drawn from his Touchstone Account. There is evidence that marital property, in the form of Joseph's Brower dividends, had been added to the account when he purchased the Glaxco stock. However, there is also evidence that the premarital property remaining in the account balance was then sufficient to cover the $3,900 that Joseph withdrew from the Touchstone Account to pay for the Glaxco stock.

{¶ 25} Joseph argues that the trial court abused its discretion when it divided the Glaxco stock as marital property because he offered evidence tracing it to the premarital balance in his Touchstone Account. The trial court made no specific finding rejecting that proposition. We might therefore find that the court necessarily rejected the traceability contention, relying on the fact that the Touchstone Account then contained marital property. However, that reasoning necessarily would ignore the traceability exception to the principle of commingling in R.C. 3105.171(A)(6)(b). Therefore, we will reverse the trial court's order dividing the Glaxco stock and remand the case for findings on the claim of traceability and for further orders as may be appropriate.

{¶ 26} The Reynolds & Reynolds and Oracle stocks present a similar traceability issue, but with a different background. Those stocks were purchased in 1997, six years after the marriage commenced. Joseph argues that they are traceable to his separate property because they were purchased with funds derived from accumulated dividends and redemption proceeds generated by other securities he owned prior to the marriage. Those transactions took place through several other stock funds that Joseph successively owned and eventually closed when he opened the Morgan Stanley account in 1997, which he funded in 1998 with funds withdrawn from his Touchstone Account.

{¶ 27} Unlike in *Fisher v. Fisher,* the court did not reject Joseph's traceability claim on a finding that he had failed to prove a necessary link in the chain of events that he sought to prove. Indeed, the court did not address the traceability claim at all. However, unlike the purchase of the Glaxco stock, the Reynolds & Reynolds and the Oracle stocks were purchased many years after the marriage began and through a complex series of transactions. A traceability claim imposes a burden of persuasion as well as a burden of proof. We are satisfied that the court could reasonably reject Joseph's traceability claim for a failure on both propositions. No abuse of discretion is demonstrated, therefore, in the division of the Reynolds & Reynolds and the Oracle stocks as marital property.

{¶ 28} The second assignment of error is sustained in part and overruled in part.

{¶ 29} The third assignment of error states:

{¶ 30} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred when it awarded the wife the sum of $92,373.00 of the husband's Touchstone Account."

{¶ 31} The trial court found that Joseph's Touchstone Account had a balance of $387,856 when the parties separated, which the court adopted as the date the marriage terminated for purposes of division of the account as marital property. R.C. 3105.171(A)(2)(b). The court awarded Joseph $203,110 of that balance as his separate property and divided the remaining $184,746 between the parties as marital property, awarding Linda $92,373 as her one-half interest.

{¶ 32} Joseph argues that the trial court erred when it found that $184,746 of the Touchstone Account balance is marital property. He presents three contentions in support of that argument.

{¶ 33} First, Joseph contends that the $184,746 balance includes $12,000 in repayments he received during the marriage on a loan he had made prior to the marriage, which represents a repayment of separate property he owned prior to marriage and to which he is entitled per R.C. 3105.171(A)(6)(a)(ii). Linda responds that the actual balance in the Touchstone Account when the parties separated was $400,544, referring to Def. Exhibit 10, which suggests that the court may have allowed Joseph to retain the $12,000 in loan proceeds when it valued the account instead at $387,856.

{¶ 34} We find no support in the record for Linda's contention. Defendant's Exhibit 10 reflects the $387,856 ending value for the Touchstone Account that the trial court used. Further, the court's particular findings make no mention of the $12,000 loan repayment. Linda does not question that those proceeds were deposited into the Touchstone Account. Therefore, we conclude that the trial court abused its discretion when it failed to take account of the loan repayments, overvaluing the marital property portion of the Touchstone Account by $12,000 as a result.

{¶ 35} Second, Joseph argues that portions of the Touchstone Account that derive from his Brower dividends are his separate property, which the trial court should not have divided with Linda. We have found no abuse of discretion in the court's classification of the Brower dividends as marital property. Therefore, this contention fails.

{¶ 36} Third, Joseph contends that $38,453.66 of the proceeds in the Touchstone Account derive from his Morgan Stanley account, to which that amount had been transferred from his pre-marital Everen Account. Joseph

argues that "[i]t is an abuse of discretion for the trial court to find that the tracing of cash from a non-marital securities account is not separate property."

{¶ 37} Joseph's trail of financial transactions has been highly complex. We have reviewed the portion of the record on which he relies and cannot find that it supports his contention that the trial court abused its discretion when it rejected his contention that $38,453.40 of the balance in the Touchstone Account is traceable to Joseph's premarital property.

{¶ 38} The third assignment of error is sustained in part and overruled in part.

{¶ 39} The fourth assignment of error reads:

{¶ 40} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred when it determined that the two (2) undeveloped lots located at 588 Tait Road in the sole name of the husband were marital property and should be listed for sale and sold with the proceeds being divided equally."

{¶ 41} Joseph purchased the two lots on Tait Road during the marriage. He argues that because the lots were purchased with dividends he received from Brower, they are traceable to his separate property and are therefore not marital property. We have found that the trial court did not abuse its discretion when it found that the Brower dividends were marital property. Therefore, the trial court correctly found that the two lots are marital property to be divided with Linda.

{¶ 42} The fourth assignment of error is overruled.

{¶ 43} The fifth assignment of error states:

{¶ 44} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred when it failed to consider tax payments made by Mr. Maloney as a marital debt."

{¶ 45} R.C. 3105.171(C)(1) charges the domestic relations court with making an equitable division of marital and separate property, which includes any and all property or an interest therein that the parties own, determined as of the date of the final hearing or another date that the court determines would be more equitable for purposes of determining marital property. R.C. 3105.171(A)(2)(b).

{¶ 46} The court divided the portion of the Touchstone Account that it determined was marital property on the basis of its value on December 29, 2000. Joseph argues that the court should have reduced the marital property portion of the account by the value of payments he made from the account on the parties' joint tax obligations after the parties separated on August 22, 2000. Joseph made $14,000 in tax payments in September 2000 and $11,000 in tax payments in December 2000 from monies in the Touchstone Account. Both dates precede the date the court adopted pursuant to R.C. 3105.171(A)(2)(b) for valuing the Touch-

stone Account. Inasmuch as these payments merely depleted the marital funds that could be divided, Joseph is not due a credit of those amounts as his own separate property.

{¶ 47} Joseph paid $54,000 in joint tax obligations with monies in the Touchstone Account in April 2001, subsequent to the date the court had determined would be equitable for purposes of division of the account as marital property. Joseph testified that the payment was made on the parties' joint tax obligation for the year 2000. If so, the payment of Linda's share of the tax obligation came out of Joseph's one-half share of the marital funds in the account. Linda argues that the $54,000 payment Joseph made did not reflect a joint obligation and that it may have been a quarterly payment of taxes for the year 2001.

{¶ 48} Joint debts are not property or an interest in property the domestic relations court must equally divide between the spouses. R.C. 3105.171(B). They represent merely a charge against the marital property that the court divides. The court may then order one of the parties to pay some or all of the joint debt out of his or her share of marital property or out of the separate property disbursed to that spouse. The court does not abuse its discretion by allocating the debts between the parties on an unequal basis, so long as the allocation is equitable. On this record, no abuse of discretion is shown in requiring Joseph to pay the joint tax obligation from the separate and marital property in the Touchstone Account that the court had awarded him.

{¶ 49} The fifth assignment of error is overruled.

{¶ 50} The sixth assignment of error follows:

{¶ 51} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred when it awarded the wife all her interest in her Bank One savings account, her Bank One personal checking account and the Bank One trust account in the name of Steven Cook, trustee, for the sole benefit of the wife."

{¶ 52} Linda's father, Jim Cook, owns and operates South Town Self Storage, where Linda has been employed as a manager. South Town leases the real property on which it operates from High Acres Limited Partnership, which was established by Linda's parents. In 1994, a 26 percent share of High Acres Limited Partnership was conveyed to Jim Cook, as trustee, for the benefit of Linda. The conveyance was a gift. Linda receives income from the trust.

{¶ 53} R.C. 3105.171(A)(3)(a) defines marital property to include all real and personal property or an interest therein that "currently is owned" or which "either or both of the parties currently has." Gifts that one spouse receives during the marriage are that spouse's separate property. R.C.

3105.171(A)(6)(a)(vii). Passive income from and appreciation on the value of a gift is likewise that spouse's separate property. R.C. 3105.171(A)(6)(a)(iii). However, any income from or appreciation on the value of the gift that is due to the labor or other contribution of either spouse is marital property. R.C. 3105.171(A)(3)(a)(iii).

{¶ 54} Joseph offered evidence showing that the value of Linda's 26 percent beneficial trust increased from $754,000 in 1994, when it was created, to $1,040,000 in 2000. There was also evidence that Linda had worked at the storage facility owned by the trust as a manager during that time. Joseph argues that the court abused its discretion when the court failed to find that the increase in value, $286,000, is marital property to be divided with Joseph because it is the product of Linda's work as manager.

{¶ 55} The $286,000 increase in the capitalized value of Linda's trust does not represent any bank account balance, which is the particular focus of this assignment of error. Nevertheless, because Linda's interest in the trust is the basis for the claims on her accounts of deposit Joseph makes, we will address whether the trust is marital property the court is charged by R.C. 3105.171 to divide.

{¶ 56} R.C. 3105.171(A)(3)(a) defines marital property in the broadest terms to include any property that either spouse currently owns or "has." However, even if the court had found that Linda "has" an interest in the corpus of the trust of which she is a beneficiary, the court could not order her to pay any part of the increase in the value of the trust to Joseph because she lacks that power and authority. The power and authority to do that are reserved to the trustee, Jim Cook, who is not a party to this action. He might have been joined for that purpose pursuant to Civ.R. 75(B)(1) as a "person * * * having possession of * * * or claiming an interest in property * * * out of which a party seeks a division of marital property," but he was not so joined.

{¶ 57} The domestic relations court is a court of equity and has "full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." R.C. 3105.011. The court could have credited Joseph in its other divisions of marital property with an amount representing the appreciation in the value of her trust resulting from Linda's labor as manager of the South Towne Self Storage facility. However, and unlike Joseph's contribution to the profits of Brower, there is no evidence showing that any increase in the value of the High Acres Limited Partnership or the interest in it owned by Linda's trust was "due to" her labor as a manager in any material respect. Joseph's mere assertion that her efforts "have increased the value" of either is insufficient.

{¶ 58} With respect to Linda's bank accounts, Joseph argues that "the Appellate Court should find that all distributions from High Acres Limited Partnership due to Mrs. Maloney's efforts and deposited in Mr. Maloney's bank accounts are marital property." The trial court awarded Linda as her separate property a Bank One Savings account with a balance of $82,606, an account owned by Steven Cook as trustee for Linda's benefit with a balance of $196,000, and her personal checking account. Joseph states that the checking account had a balance of $6,160.

{¶ 59} The trust's bank account, like the trust itself, is not marital property. Joseph contends that the other two accounts necessarily contain deposits of money that Linda earned during the marriage, which is marital property. However, he does not support his contention with citations to the record showing that any such deposits were made. See App.R. 16(A)(7). Therefore, we must rely on the presumptions of regularity and as a result cannot find that the trial court abused its discretion when it awarded the balances in those accounts to Linda as her separate property.

{¶ 60} The sixth assignment of error is overruled.

{¶ 61} The seventh assignment of error states:

{¶ 62} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred when it failed to acknowledge the $286,000.00 increase in value of wife's interest in High Acres Limited Partnership."

{¶ 63} This assignment of error repeats the contentions in the sixth assignment of error, but with respect to her brother's beneficial interest in the family trust that Linda holds as trustee. That Linda is trustee for her brother presents no basis to find that his trust is property she "owns" or "has" and is therefore marital property per R.C. 3105.171(A)(3)(a), which the court must divide.

{¶ 64} The seventh assignment of error is overruled.

{¶ 65} The eighth assignment of error reads:

{¶ 66} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred when it failed to acknowledge a payment of $42,000.00 from the employer of Mrs. Maloney as marital property."

{¶ 67} "Any gift of real or personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse" is the separate property of that spouse. R.C. 3105.171(A)(6)(a)(vii).

{¶ 68} Linda received a check for $42,000 from her father in 1997, drawn on the account of South Towne Self Storage. Joseph does not contend that it was a joint gift to both Linda and him. Rather, he contends that it was not a gift at all, but additional compensation for Linda's services as manager. If so, it is income which, if it yet exists in the form of property, is marital property that must be divided.

{¶ 69} The clear and convincing evidence standard in R.C. 3105.171(A)(6)(a)(vii) doesn't apply to the issue presented, which is whether the $42,000 was a gift or income. Instead, that issue is to be determined on the preponderance-of-the-evidence standard.

{¶ 70} Linda testified that the payment was a gift, not income. There is evidence that, consistent with the purposes of her parents' complex estate plan, Linda deposited the $42,000 into an account into which she had deposited other gifts from her parents.

{¶ 71} There is some competent, credible evidence that supports the trial court's finding. No abuse of discretion is demonstrated.

{¶ 72} The eighth assignment of error is overruled.

*Linda Maloney's Cross–Appeal*

{¶ 73} The first cross-assignment of error states:

{¶ 74} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred in only awarding wife $78,370.00 for her share of the marital portion of husband's interest in Brower Insurance Company."

{¶ 75} The trial court awarded Joseph as his separate property the seven percent partnership share in Brower that he owned prior to the marriage, and it divided as marital property the additional 1.38 percent partnership share he acquired during the marriage. Linda attacks the awards on these grounds.

{¶ 76} First, Linda argues that the court undervalued the marital property portion of Joseph's final 8.38 percent interest in Brower. After the parties married, Joseph sold 0.42 percent of his premarital seven percent interest in Brower, reducing his interest to a 6.58 percent interest in Brower. He later purchased an additional 1.8 percent in Brower during the marriage, bringing his total interest in Brower when the marriage terminated to an 8.38 percent interest. The court divided the value of the 1.38 percent difference between Joseph's premarital and final interests as marital property. Linda argues that the court should instead have divided the entire 1.8 percent portion Joseph purchased during the marriage as marital property, reducing the separate property portion of his interest to the balance of the 8.38 percent he finally owned, or 6.58 percent of Brower.

{¶ 77} R.C. 3105.171(A)(3)(a)(i) defines marital property to include all real or personal property or an interest therein that either spouse owns "and that was acquired by either or both of the spouses during the marriage." If Joseph acquired a 1.8 percent interest in Brower during the marriage, with marital funds, it is marital property that must be divided pursuant to R.C. 3105.171(C)(1), irrespective of what he owned prior to the marriage. Therefore, the court abused its discretion when it divided only the 1.38 percent portion of his Brower interest as marital property.

{¶ 78} Second, Linda argues that Joseph's remaining 6.58 percent interest in Brower is not his separate property because it was acquired with marital funds.

{¶ 79} Joseph purchased his seven percent interest in Brower prior to the marriage with $173,352 in loans from three Brower partners: J. Norman Eckstein, Charles Castle, and William Thompson. Joseph repaid some or all of these loans after the parties were married, using funds from his Touchstone Account.

{¶ 80} When property is acquired by one spouse prior to marriage, using borrowed funds that are repaid during the marriage, using marital funds for the repayment, the property is not separate but marital, to the extent of the repayments made. *McLeod v. McLeod,* Lake App. No. 2000–L–197, 2002-Ohio-3710, 2002 WL 1627834.

{¶ 81} From the record, it appears that Joseph made a loan repayment from the Touchstone Account prior to December 29, 1991, and several later, in October 1992. Linda argues that all were made using marital funds.

{¶ 82} If, when Joseph made any of these loan repayments, the premarital balance in the Touchstone Account was insufficient to cover the amount paid, the repayment was necessarily made with marital funds, at least to the extent of the insufficiency. In that event, the portion of his Brower partnership interest that was purchased with the amount loaned and repaid is likewise marital property.

{¶ 83} On remand, the court must determine whether when the loan repayments were made the premarital balance in the account was sufficient to cover the repayments. If not, the portion of Joseph's interest in Brower that the repayment represents is marital property.

{¶ 84} Third, Linda argues that the trial court failed to consider the value of Brower's capital account and Joseph's share in it when the court valued his interest in Brower.

{¶ 85} The Amendment to the Articles of Co–Partnership of Brower states: "We, being all the partners of the Brower Insurance Agency, P.L.L., hereby value the equity of the same property, *excluding our capital accounts,* at

$7,300.000." (Emphasis added.) The trial court found that Joseph's 8.38 percent interest in Brower was worth 8.38 percent of $7,300,000, or $611,740.

{¶ 86} John Barron, Joseph's partner, testified that the Brower partnership was worth $7,300,000, but he was unable to offer any evidence concerning the partners' capital accounts. Linda's expert, Alan Duvall, testified that, based on Brower's financial statements, Joseph's interest in Brower was worth an additional $161,000 when the value of his share of Brower's capital account is considered.

{¶ 87} If the valuation of Brower and Joseph's share of that value did not include his capital account, then the court undervalued the portion of Joseph's interest in Brower that is divisible as marital property. On remand, the court must determine whether the value it found did or did not include Joseph's capital account and enter judgment accordingly.

{¶ 88} The first cross-assignment of error is sustained.

{¶ 89} The second cross-assignment of error reads:

{¶ 90} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred in only awarding wife $92,373.00 for her half of the marital interest in the touchstone money market account."

{¶ 91} Linda argues that the trial court abused its discretion when it awarded $101,210 of the Touchstone Account to Joseph as his separate property on a finding that it was traceable to his premarital property.

{¶ 92} The parties were married on September 20, 1991. The $101,210 the court awarded Joseph was the balance in the Touchstone Account on December 29, 1991, over three months later.

{¶ 93} Marital property includes all real and personal property that was acquired by either spouse during the marriage. R.C. 3105.171(A)(3)(a)(i). "During the marriage" means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce." R.C. 3105.171(A)(2)(a). However, if the court determines that adoption of either date would be inequitable, it may adopt another date or dates it "considers equitable in determining marital property." R.C. 3105.171(A)(2)(b). Whether to choose a date other than the date of the final hearing to determine when the marriage has ended is, therefore, a matter committed to the sound discretion of the trial court.

{¶ 94} Linda argues that she was prejudiced by the trial court's use of the December 29, 1991 date to determine the premarital value of the Touchstone Account. She points out that its balance at the beginning of December 1991 was $79,396, which indicates that deposits were made prior to achieving the December 29, 1991 balance of $101,210 that could have been from marital property.

{¶ 95} The court made no finding that determining the premarital balance of the Touchstone Account as of the date of the marriage, September 10, 1991, would be inequitable, or that December 29, 1991, would be a more equitable date for the determination. Neither does the record portray a reason for such a choice that reasonably may. be inferred. It may be that the court adopted the December 29, 1991 date as a matter of convenience, absent evidence of the balance in the account on September 10, 1991. However, such a choice could deprive Linda of her right to share in marital property added to the account between the two dates and reward Joseph for any failure on his part to produce more relevant proof of the account's premarital balance, which was his burden as the proponent of the separate property claim.

{¶ 96} We conclude that the trial court abused its discretion when it adopted a date other than the date of the marriage for determining the separate property portion of the Touchstone Account to be disbursed to Joseph, absent a finding that using the date of the marriage would be inequitable and that another date used would be equitable. R.C. 3105.171(A)(2). The determination will be reversed, and on remand, the court should either explain why the date it used would be more equitable or, if it does not, require proof from Joseph of the September 10, 1991 balance if his separate property claim is to be sustained. This determination may, of course, likewise require modification of several other of the findings the court made with respect to the Touchstone account.

{¶ 97} The second cross-assignment of error is sustained.

{¶ 98} The third cross-assignment of error follows:

{¶ 99} "The Montgomery County Common Pleas Court, Division of Domestic Relations erred in awarding the Moraine Country Club membership to husband free and clear of any claims of wife."

{¶ 100} On February 13, 1999, Joseph purchased a nonrefundable membership in the Moraine Country Club for $26,000 with monies from the Touchstone Account. The court awarded the membership to Joseph. The court declined to credit Linda one-half, the $26,000 that had been paid to purchase the membership, reasoning that the membership is not a divisible asset.

{¶ 101} Marital property includes all property, real and personal, that either party owns and all interest that either party has in any real or personal property. R.C. 3105.171(A)(3)(i) and (ii). When property is marital, the court must divide it equally, unless an equal division would be inequitable, in which event the court "shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1).

{¶ 102} The court could not divide the single membership between Joseph and Linda, and so an award of the membership to Joseph is equitable. However, it

does not follow that Linda is then not to be compensated for one-half of the value of the membership. Even though in this circumstance it "has" a value only to the spouse to whom it was awarded, if Joseph elects to retain the membership, Linda is entitled to one-half of the 1996 purchase price. The court is authorized by R.C. 3105.171(E)(2) to make a distributive award of that amount to Linda from Joseph's separate property in order to effectuate the division of the membership the court ordered. The court abused its discretion when it failed to do that.

{¶ 103} The third cross-assignment of error is sustained.

### Conclusion

{¶ 104} Having sustained Joseph Maloney's assignments of error in part and all of Linda Maloney's cross-assignments of error, we will reverse the judgment from which the appeal was taken in part and remand the case for further proceedings consistent with this opinion. The judgment is otherwise affirmed.

Judgment affirmed in part
and reversed in part,
and cause remanded.

WOLFF and FAIN, JJ., concur.