[Cite as *Forcier v. Forcier*, 2019-Ohio-5051.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| BEVERLY FORCIER, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-G-0191** |
| PAUL GERARD FORCIER, et al., | : | |
| Defendant-Appellant. | : | |

Appeal from the Geauga County Court of Common Pleas, Case No. 2015 D 000574.

Judgment: Modified and affirmed as modified.

*Kyleigh A. Weinfurtner,* Zashin & Rich Co., LPA, 950 Main Avenue, 4th Floor, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Dominic M. Antonelli* and *Kristen A. Crane,* Kvale Antonelli & RAJ, 1406 West Sixth Street, Second Floor, Cleveland, OH 44113 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Dr. Paul Gerard Forcier, appeals from the final judgment granting a divorce to appellee, Dr. Beverly Forcier. At issue is the trial court's adoption of the magistrate's decision as it relates to the division of various property items. We modify the judgment and affirm as modified.

{¶2} The parties, each medical doctors, were married in December 1979. Four children, all emancipated, were born of the marriage. Early in the marriage, appellee worked full time as an ophthalmologist, but as the parties' children were born, she

reduced her hours, eventually retiring in 1997. Appellant, an orthopedic surgeon, has been the parties' primary wage earner. Throughout their marriage, the parties invested in real estate and had multiple investment accounts, some were held jointly and others individually. Appellant managed the parties' finances and controlled the various accounts. Although the parties had a relatively high income, due to appellant's salary and their investments, they lived frugally. Ultimately, between their incomes, savings, funds received as gifts, and investments, the marital estate grew in excess of $15 million. The parties separated in 2015 and appellee subsequently filed for divorce. During litigation, multiple stipulations were filed. After many of the issues were settled, four matters remained for the trial court to decide: (1) the disposition of marital property in Haywood County, Tennessee; (2) the disposition of property in Carroll County, Ohio; (3) the disposition of appellee's separate property; and (4) whether appellant committed financial misconduct and violated his duty to support appellee.

{¶3} At the final hearing, evidence demonstrated the parties owned some 561.01 acres of real property located in Haywood County, Tennessee. Between 1998 and 2003, the parties paid approximately $660,000 for the property. Both parties sought to retain the property, free and clear of any claim by the other. Appellee argued she should be entitled to retain the property due to its personal value and the ancestral connections to her family; appellant asserted he should be entitled to the property due to its past, present, and future investment value.

{¶4} Appellee, who was interested in genealogy, traced her family's ownership of land in Haywood County from the 1820s. She had fond childhood memories of trips to Haywood County to visit relatives. In 2004, the parties learned of a potential large

industrial "megasite" that the Tennessee Valley Authority was developing on property adjoining the Haywood County property. At the time of trial, however, there was no indication that any development of the "megasite" had or would commence. Still, appellant testified the parties investigated other properties prior to purchasing the Tennessee land and selected the Haywood County property due to the greater rate of return on potential rental income. He further asserted the proximity to the potential "megasite" would cause the property to significantly increase the land's value.

{¶5} Appellee enlisted John Powell Jenkins, a certified appraiser in the state of Tennessee, to assign a value to the Haywood County property. After visiting the property, taking photos, and reviewing comparable sales, Mr. Jenkins concluded the property had a market value, at the time of the final hearing, of $1,856,943. Mr. Jenkins noted he was aware of the potential "megasite," and inquired locally about its development. When he visited the property, Mr. Jenkins did not observe any indication that the adjacent land was being developed.

{¶6} In lieu of completely divesting one of the party's entire possessory interest in the property, appellant proposed dividing Haywood County property. Mr. Jenkins, however, testified partitioning the property, such that each party would receive equal value, would be difficult. The property includes agricultural fields, wooded areas, and, due to its size, aspects of the land do not have enough road frontage to effectively divide the land. In light of these points, not every acre or region of the land is of equal or similar value. He opined the property's best and most lucrative use was farming and nothing would indicate this would change in the future.

{¶7} Appellee's parents owned substantial real estate and assets and, during the parties' marriage, her parents transferred interest in numerous properties to appellee, appellant, and their children. In 1991, appellant received an undivided one-sixth interest in the property in Carroll County, Ohio. The other deeded owners were appellee's niece, her two nephews, and the parties' two sons. Since obtaining an ownership interest in the property, appellant has received one-sixth of the rents and other income associated with the same.

{¶8} Appellee sought to impose a constructive trust upon appellant's interest in the Carroll County Property for the benefit of the parties' two daughters and nephew and designate appellee as the trustee. According to appellee, when the one-sixth interest was transferred to appellant, her parents intended him to be merely a placeholder. Specifically, she asserted her parents, in transferring the interest, were maximizing their annual exclusion for purposes of estate and gift taxes; their ultimate goal was to have appellant transfer the one-sixth interest to their living grandchildren and not give appellant an indefinite ownership interest. Appellant maintained he was not aware he was a mere placeholder until the divorce was filed.

{¶9} Appellee testified she and appellant discussed transferring his interest in the Carroll County property in 2011, pursuant to the alleged intention of her parents. Appellant, however, was unwilling to transfer, but, according to appellee, he did not dispute the plan to eventually transfer the interest. Moreover, appellee's sister stated she recalled hearing appellant and her father discussing the "pass through," for the benefit of the grandchildren.

4

{¶10} Appellee hired Brent Tyler Kuwatch, a licensed real estate appraiser in the state of Ohio. Mr. Kuwatch appraised the Carroll County Property with a market value of $705,000.

{¶11} With respect to appellee's separate property, appellee's parents gifted numerous properties to her and her siblings. Starting in 2006, the parties notified appellee's siblings and advised them they no longer wished to be joint owners. The various properties were ultimately sold and appellant deposited the proceeds from the sale in the parties' joint accounts. These funds were therefore commingled with marital assets. Appellee asserted appellant compelled her to sell the properties, which caused a rift with her siblings. Appellant stated that appellee had problems with her siblings prior to the sales and he believed selling the properties would eliminate the problems. Between the proceeds from the sales of the properties, proceeds received from the state of Tennessee in compensation for property taken by eminent domain, and other income from separate-property interests, appellee received $2,242,836 through gifts and inheritances from 2003 through 2014.

{¶12} Both parties had access to their joint accounts, but appellant wrote nearly all checks and managed all finances. Appellant was an active investor of both marital and separate funds. And, according to appellee, appellant would frequently endorse her name on checks and other financial documents without her knowledge or permission. Sometime after 2007, appellant ceased depositing his income into the parties' joint account, which was used to fund family expenses, and commenced dissipation of over $1,000,000 in appellee's separate property. Appellant asserted he treated all funds as "our" money and moved the funds to maximize investments.

5

{¶13} Appellee retained John D. Davis, an expert in public accounting, forensic accounting, and valuation analysis, to trace her separate property. Mr. Davis noted three tracing methodologies employed by forensic accountants: direct tracing, lowest intermediate balance, and proportionate share. Mr. Davis stated he used direct tracing to identify the amounts going into the accounts and then utilized the lowest intermediate balance to identify the assets that continued to exist as separate property. He noted he did not use the proportional share approach because it assumes the deposited funds are fungible; in this matter, he maintained, the cash in the accounts was not fungible, but rather included both marital and separate property.

{¶14} Mr. Davis also testified he used the lowest intermediate balance approach because it provided for equitable recovery of the assets based on the parties' intentions; to wit, appellee's intention to keep her separate property separate, and appellant's financial intentions, circumstantially gleaned from his patterns of deposits, non-deposits, and withdrawals from the family's operating account(s). Moreover, according to Mr. Davis, the lowest intermediate balance approach assumes traced assets exist as long as the account balance does not fall below the amount on deposit. Put differently, when separate assets were deposited into the joint accounts, marital funds are utilized to pay expenses first and, if the balance falls below the original amount in marital funds, the separate property is still traceable, as long as it is not dissipated. Of the $2,242,836 in separate property appellee inherited, Mr. Davis was able to trace $1,075,907 of actual funds located in accounts existing at the date of trial. In addition, Mr. Davis calculated the traced funds passively accumulated $428,065 in interest, for a total of $1,503,972 of total traced property, plus interest.

{¶15} Appellant retained Robert Nemeth, a certified public accountant, a certified valuation analyst, and a certified divorce financial analyst to trace the parties' separate property. Mr. Nemeth utilized the proportional share methodology, which follows transactions in an account and adjusts parties' separate versus marital assets. The tables used by Mr. Nemeth were prepared by appellant, at Mr. Nemeth's direction. Mr. Nemeth ultimately testified to $300,000 of "misclassifications," (marital property rather than appellee's separate property), which impacted the amount to which the parties were entitled. Mr. Nemeth concluded that appellee should be awarded $740,551 in separate property.

{¶16} After the hearing, the magistrate issued her decision. She concluded appellee should retain the Haywood County, Tennessee property, valued at $1,856,943, and appellant was entitled to one-half the value of the property, i.e., $928,471.50. In so concluding, the magistrate found:

> {¶17} It is difficult to believe Defendant that the parties purchased this property purely as an investment with no consideration as to any family connection. While Defendant may have agreed to the purchase for the reasons he stated, instead of purchasing a farm in Iowa, the parties purchased a property that Plaintiff and her family visited in her childhood, a property that bordered property owned by Plaintiff's parents and later gifted to the parties' children. There is a reliable fair market value for the property. By allowing Plaintiff to retain the property and compensate Defendant his half, the parties are saving the cost of sale and avoiding potential real estate tax consequences as well as potential income tax consequences.

{¶18} The magistrate next concluded appellant should retain the one-sixth interest in the Carroll County, Ohio property as well as the rents associated with the same. In support, the magistrate found that had appellee's parents intended to deed appellant something different than the one-sixth ownership interest, they could have

7

attached conditions to the grant. The magistrate determined "[p]laintiff's parents were wealthy, tax conscious, and financially savvy. If they had intended to do anything other than give defendant an interest in the property, they had the knowledge and the means to do so."

{¶19} Next, the magistrate determined the traceable amount of separate property to which appellee was entitled is $1,075,907, the amount traced by appellee's expert using the lowest intermediate balance method. She further determined appellee should be entitled to $428,065 in passive interest based upon the actual rate of return the separate funds would have generated.

{¶20} The magistrate additionally recommended that "all marital property be divided equally between the parties with the parties retaining the assets pursuant to exhibit B." Exhibit B included tables setting forth marital assets as well as separate assets that were ostensibly not in dispute at the hearing.

{¶21} Finally, the magistrate determined both parties are wealthy, well educated, tax conscious, financially savvy, and competent professionals. And no evidence was adduced to show appellee was unable to access the joint bank account or look out for her own personal and financial interests. The magistrate thus found both parties are capable of supporting themselves and no statutory duty of support was breached. The magistrate also concluded appellant did not commit financial misconduct.

{¶22} The parties both filed objections to the magistrate's decision, as well as supplemental objections. Appellant objected to the amount of traceable separate property, along with interest, the magistrate awarded appellee; appellant further claimed the magistrate erred in awarding the Haywood County, Tennessee real property to

8

appellee. Alternatively, appellee asserted the magistrate committed error in concluding appellant did not breach his statutory duty of support as well as her decision that appellant did not commit financial misconduct. Appellee further objected to the magistrate's decision that appellant should retain the one-sixth interest in the Carroll County, Ohio property, including the proceeds derived from the property.

{¶23} After considering the parties' objections, the trial court modified the magistrate's decision and adopted it as modified. In particular, the trial court agreed that the value of appellee's separate property is $1,075,907. The court, however, determined it did not "agree that plaintiff is entitled to interest or appreciation upon the separate property determined by the lowest intermediate balance approach." The court did not expressly disagree with any remaining dispositional recommendation of the magistrate.

{¶24} Appellant now appeals assigning five errors. His first asserts:

{¶25} "The trial court erred in awarding the Haywood County, Tennessee real property to Plaintiff."

{¶26} The division of marital property "shall be equal" unless equal division would be inequitable. R.C. 3105.171(C)(1). Accordingly, "[t]he trial court is not required to make an equal division of the marital estate, so long as the division is equitable." *Hadinger v. Hadinger*, 10th Dist. Franklin No. 15AP-09, 2016-Ohio-821, ¶15, citing *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraphs one and two of the syllabus. And a trial court's decision on the equitable division of marital property is subject to an abuse of discretion standard of review. *Martin v. Martin*, 18 Ohio St.3d 292, 294-95 (1985).

9

{¶27} At trial, appellee testified at length that she has a personal, familial connection with the Haywood County property. She noted the property had ancestral ties to the property from the early to mid-1800s; as such, she expressed a desire to keep the property in her family. Appellant testified he desired to have the property for the purpose of maintaining diverse investments; and, he pointed out the potential for the property to significantly increase in value if the "megasite" were developed. Given this point, he maintained, even if the court decided not to award him the property in full, it should order the property partitioned so both parties could receive greater investment returns in the future.

{¶28} The magistrate, after weighing each parties' position, found appellant's testimony that the property was purchased merely for its investment value not credible in light of its undisputed connection to appellee's family. The magistrate also noted that Mr. Jenkins' testimony that there was no obvious indication the adjacent property is or will be developed into a "megasite." Mr. Jenkins further pointed out that dividing the property would be impracticable because it lacks adequate road frontage and is comprised of farmland and wooded areas that do not have, acre-per-acre, a common value. In light of these points, we conclude the trial court did not abuse its discretion in adopting the magistrate's decision to award appellee the Haywood County property and, in turn, award appellant one-half the fair market value of the property. By awarding the property to appellee and compensating appellant, the parties avoided the costs associated with an outright sale; similarly, by declining appellant's proposal to divide the property, the trial court saved the parties time and resources associated with hiring surveyors, among others, to determine a fair and equitable partition. We hold the trial

10

court's decision to adopt the magistrate's decision on this issue is both reasonable and equitable given the facts and circumstances of this case.

{¶29} Appellant's first assignment of error lacks merit.

{¶30} We shall next consider appellant's third assignment of error, which asserts:

{¶31} "The trial court erred in ordering Exhibit B, Table 1 to be divided equally between the parties, as said Exhibit B, Table 1 is inconsistent with the parties' Joint Stipulations regarding agreed upon values for the Haverhill, NH real property and the 2267 Delamere Drive, Cleveland Heights, Ohio real property, which said stipulations are attached to the magistrate's decision and incorporated into the trial court's judgment."

{¶32} Appellant failed to object to the foregoing issue. The failure to object to a magistrate's decision waives all but plain error review on appeal. Civ.R. 53(D)(3)(b)(iv).

{¶33} In her decision, the magistrate incorporated the parties' written stipulations, entered, in relevant part, on May 23, 2016. She also incorporated Exhibit B, Table 1, captioned "Marital Assets and Liabilities," into her decision. The trial court adopted these incorporations. The parties made the following stipulations relating to two marital properties:

{¶34} "The fair market value of the Haverhill, New Hampshire real property is $655,000.00. The parties acknowledge and agree that Defendant shall retain said real property as his sole and separate property free and clear of any interest by Plaintiff.

{¶35} "The fair market value of the former marital residence located at 2267 Delamere Road, Cleveland Heights, Ohio is $321,000.00. The parties acknowledge

11

and agree that Defendant shall retain said real property as his sole and separate property free and clear of any interest by Plaintiff."

{¶36} Exhibit B, Table 1, in addition to setting forth numerous investment and retirement accounts, sets for the Haverhill, New Hampshire property and the Cleveland Heights property as marital assets; it also, however, sets a value of the former at $662,000.00 and values the latter at $332,000.00. These valuations occurred November 12, 2015 and January 15, 2016, respectively.

{¶37} The trial court, adopting the magistrate's recommendation, ordered "[t]he real and personal property listed in Table 1 of Exhibit B attached hereto shall be divided equally between the parties." Appellant argues the trial court erred in drawing this conclusion because it failed to explicitly state that the parties' stipulations controlled the valuations of the real property at issue. We agree.

{¶38} A stipulation is a voluntary agreement, admission, or concession, made in a judicial proceeding by the parties and/or their attorneys concerning the disposition of some relevant point so as to obviate the need for proof or to narrow the range of issues to be litigated. *See Vengrow v. Vengrow,* 9th Dist. Summit No. 24907, 2010-Ohio-2568, ¶10. The stipulation as to the value of the New Hampshire and Ohio properties at issue was a concession jointly agreed upon by the parties and accepted by the court. The stipulation relieved the parties of the need to establish the fair market value of the properties. The stipulation was entered after the date of the valuations on the exhibit and therefore controls.

{¶39} By ordering the parties to equally divide the real property, the court essentially required appellant to pay appellee half the value of the properties. That

12

value, however, is properly reflected in the stipulations. We therefore modify the trial court's judgment to appropriately reflect the values to which the parties stipulated; thus, to the extent the property division set forth in the final judgment has been satisfied, appellant is entitled to a redistribution of $18,000.

{¶40} Appellant's third assignment of error has merit.

{¶41} As they are related, we shall address appellant's second and fourth assignments of error together. They provide:

{¶42} "[2.] The trial court erred in failing to explicitly award to defendant the rents associated with the Carroll County real property when the trial court awarded real property to defendant as his separate property.

{¶43} "[4.] The trial court erred in ordering Exhibit B, Table 1 to be divided equally between the parties, as account ending 5168 is comprised entirely of the rents associated with the Carroll County real property, which is Defendant's separate property and should have been awarded to defendant and said award is inconsistent with the parties' stipulations attached to the magistrate's decision and incorporated into the trial court's judgment."

{¶44} In her decision, the magistrate recommended the trial court award appellant the one-sixth interest in the Carroll County, Ohio property as well as the "rents" associated with the property as his separate property. In its judgment, the trial court incorporated the magistrate's decision "[e]xcept as modified herein." The court then reduced the amount of funds the magistrate awarded as separate property by removing the amount of interest calculated. The court then proceeded to essentially reiterate the magistrate's dispositional recommendations, including the decision to

award appellant the Carroll County property as separate property. The trial court, however, did not expressly state appellant was entitled to the "rents" associated with the property.

{¶45} It would seem the omission of the "rents" was an oversight, rather than a modification; after all, the trial court acknowledged the property was appellant's separate property and, as such, he would be entitled to any "rents" or proceeds from that property. Furthermore, the magistrate noted that a portion of the rents associated with the Carroll County property are in Fidelity account #5168. And the magistrate ordered the *marital property* set forth in Exhibit B, Table 1 to be divided equally between the parties. Appellee does not specifically dispute that account #5168 includes at least some "rents." Hence, to the extent the trial court summarily ordered all the money in account #5168 to be divided equally between the parties, it committed error. We therefore modify the trial court's judgment to reflect the magistrate's recommendation that all marital property listed in Exhibit B, Table 1 be divided equally and appellant's separate property located in account #5168 be distributed to him prior to such division.

{¶46} Appellant's second and fourth assignments of error have merit.

{¶47} Appellant's fifth assignment of error contends:

{¶48} "The trial court erred in valuing plaintiff's separate property at $1,075,907.00."

{¶49} Appellant contends the trial court erred in adopting the magistrate's recommendation that Mr. Davis' use of the lowest intermediate balance approach was a proper means of tracing appellee's separate property. He claims the proportional share

14

method, used by Mr. Nemeth, is more equitable and provides a more accurate calculation of appellee's separate property.

{¶50} "Any property or an interest therein that either spouse owns when the marriage terminates is presumed to be marital property." *Maloney v. Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, ¶20 (2d Dist.) The burden of establishing that specific property owned when the marriage terminates is not marital but separate is upon the proponent of the claim. *Peck v. Peck*, 96 Ohio App.3d 731, 734 (12th Dist.1994). This "burden must be sustained by a preponderance of the evidence." (Citation omitted.) *Id.* Co-mingling does not destroy the separate nature of property, but the separate property must be traceable. *Id.* "Because traceability presents a question of fact, we must give deference to the trial court's findings, and the court's decision on the matter will not be reversed as against the manifest weight of the evidence when it is supported by competent, credible evidence." *Maloney, supra,* at ¶23, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978).

{¶51} Appellant does not appear to contest the trial court's finding that appellee actually received $2,242,836 in separate property obtained through gifts and inheritance between 2001 and 2011. Rather, he maintains Mr. Davis' conclusion that $1,075,907 is traceable is inequitable for the following reasons: appellee acquiesced to appellant controlling and managing the couple's finances; she was aware that appellant was depositing her funds and commingling them with marital property; and she never objected to the manner in which appellant handled the couple's or her separate funds. Because of these points, appellant argues the magistrate erred and the trial court abused its discretion in failing to utilize the proportional share method advanced by Mr.

15

Nemeth. Appellant essentially asserts the trial court abused its discretion in adopting the magistrate's recommendation to accept Mr. Davis' use of the lowest intermediate balance method, which found appellee was entitled to $1,075,907 in traceable, non-dissipated separate funds.

{¶52} Appellant asserts the trial court erred and should have employed the proportional share methodology. In his brief, appellant describes this methodology as increasing and decreasing "the value of the account of marital and non-marital assets in proportion to the total as monies are deposited into the account and as monies are debited from the account for payment of expenses and is the only equitable manner for determining value for marital and non-marital assets in a commingled cash account that has fluctuated in balance for years, sometimes even falling below the value of plaintiff's asserted separate property." Preliminarily, appellant offers no authority for his assertion that the proportional share method is the "only equitable" means for establishing marital and separate property in a commingled account. Mr. Davis acknowledged the proportional share method as one of several valid methods of tracing commingled separate property. He testified, however, that under the circumstances of this case that the lowest intermediate balance approach yielded a more equitable determination. Appellant was able to cross-examine Mr. Davis on his method and there is nothing to suggest the lowest intermediate balance method distorted or artificially inflated appellee's assets. The magistrate agreed with Mr. Davis and we discern no error in this conclusion.

{¶53} The magistrate found appellant supplied the data for Mr. Nemeth's analysis and, at trial, it was established that some data was mischaracterized which led

16

to a distorted conclusion. Specifically, Mr. Nemeth testified to some $300,000 being misclassified which impacted the division of marital and separate property in appellant's favor. This point alone militates in favor of the magistrate's decision. Data entry errors fundamentally affect the reliability and credibility of Mr. Nemeth's conclusions, regardless of the arguable advantages of utilizing the proportional share method.

{¶54} The lowest intermediate balance method assumes that traced funds are the last funds withdrawn from a commingled account. With this in mind, the evidence demonstrated a specific and certain amount of separate property that appellee received from gifts and inheritances. And this sum was supported by deposit records from the various accounts in which the funds were deposited. Appellant controlled and managed all the parties' finances, both separate and marital. And, even though appellee acquiesced to this control, she testified she still thought appellant was investing assets to specifically maximize returns and not dissipate her separate property. At some point in 2007, appellant stopped depositing his income into the family's operating account and commenced depositing appellee's separate monetary funds. Mr. Davis testified that, at certain points, the balance fell below the amount of separate funds deposited by appellant, thus causing the separate property to be dissipated. Appellee stated she was unaware her separate funds were being depleted in this fashion.

{¶55} Appellee testified it was her intention to keep her separate property separate and the magistrate elected to believe appellee's representation. Given this, and Mr. Davis' testimony that the lowest intermediate balance method focuses on the parties' intentions, the magistrate found this method a more equitable manner of tracing

17

appellee's separate funds in this case. The trial court did not abuse its discretion in adopting the magistrate's decision.

{¶56} Appellant's fifth assignment of error lacks merit.

{¶57} For the reasons discussed in this opinion, the judgment of the Geauga County Court of Common Pleas is modified and affirmed as modified.


THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.

18