[Cite as *Bergman v. Bergman*, 2013-Ohio-715.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

ROBERT LEE BERGMAN, JR.          :

     Plaintiff-Appellee          :  C.A. CASE NO.      25378

v.          :  T.C. NO.      11LS22

KENDRA BERGMAN, et al.          :     (Civil appeal from Common
                                    Pleas Court, Domestic Relations)

     Defendant-Appellant          :

                                            :

. . . . . . . . . .

**O P I N I O N**

Rendered on the      1st      day of      March      , 2013.

. . . . . . . . . .

JOSEPH P. MOORE, Atty. Reg. No. 0014362, 262 James E. Bohanan Memorial Drive, Vandalia, Ohio 45377
        Attorney for Plaintiff-Appellee

KEITH A. FRICKER, Atty. Reg. No. 0037355, 7460 Brandt Pike, Huber Heights, Ohio 45424
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    Defendant-appellant Kendra Bergman appeals from a decision of the

Montgomery County Court of Common Pleas, Domestic Relations Division, regarding the terms of her contested divorce with plaintiff-appellee Robert Lee Bergman, Jr. The decision was rendered by the trial court on July 17, 2012. The trial court issued the parties' Final Judgment and Decree of Divorce on August 22, 2012. Kendra filed a timely notice of appeal with this Court on September 18, 2012,

{¶ 2}    Robert and Kendra were married in Clayton, Ohio, on August 19, 1994, and one child, R.L.B., was born during the course of the marriage, born on January 21, 1995. The parties separated on June 27, 2011, and on June 29, 2011, Robert filed a complaint for legal separation. When it became apparent that the parties would be unable to amicably dissolve their marriage, Robert filed a motion to convert the legal separation to a divorce. The trial court granted Robert's motion, and on November 8, 2011, he filed an amended complaint for divorce.

{¶ 3}    On May 7, 2012, a trial was held before the court in order to determine the terms of the parties' divorce, specifically the division of marital assets. Shortly thereafter, the trial court issued its decision regarding the division of marital assets between the parties. On August 22, 2012, the Final Judgment and Decree of Divorce was filed which outlined the parties' duties and responsibilities regarding child support and custody, spousal support, and the division of the marital estate. We note that Robert was awarded full custody of the parties' minor son.

{¶ 4}    It is from this judgment that Kendra now appeals.

{¶ 5}    Kendra's first assignment of error is as follows:

{¶ 6}    "THE COURT COMMITTED ERROR IN THE MANNER OF THE

DIVISION OF APPELLEE'S SICK, VACATION AND COMP TIME."

{¶ 7}     In her first assignment, Kendra does not argue that the trial court erred when it divided Robert's accrued sick leave and vacation time.  Rather, Kendra asserts that the trial court erred when it failed to require Robert to pay to her the alotted portion of his accrued sick leave and vacation leave at the time of the final divorce hearing instead of when Robert finally chose to retire.

{¶ 8}     "Under R.C. 3105.171(C)(1), the court is to divide marital property equally, unless an equal division is inequitable. Trial courts have broad discretion in deciding appropriate property awards, and we reverse only if the trial court abuses its discretion. * * * ."  *Donnelly v. Donnelly*, 2d Dist. Green No. 2002-CA-53, 2003-Ohio-1377, ¶ 38.

{¶ 9}     As the Supreme Court of Ohio determined:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable.  (Internal citation omitted).  It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision.  It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.  *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 10} R.C. 3105.171(A)(3)(a)(i) defines marital property to include: "All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." "During the marriage" means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce," except that if the court determines that either of those dates "would be inequitable, the court may select dates it considers equitable in determining marital property."

{¶ 11} Initially, we note that neither party disputes that Robert's sick leave and vacation time that was accrued during the parties' marriage are both marital assets subject to division and distribution. We also note that neither party disputes the trial court's valuation of Robert's sick leave benefits and vacation time that was accrued during the parties' marriage.

{¶ 12} Specifically, Kendra asserts that she is entitled to payment of her portion of Robert's sick leave benefits and vacation time immediately at the time of the issuance of the final divorce decree instead of when Robert chooses to retire or is otherwise discharged from his current employment. Upon review we conclude that the trial court did not abuse its discretion by finding that Kendra is not entitled to any distribution from Robert's accrued sick leave benefits and vacation time until the date on which he retires or is discharged.

{¶ 13} "[S]everal Ohio appellate districts have determined that accrued sick leave benefits resemble deferred bonus payments or pension plan accumulations and, as such, qualify as an interest in property subject to division as a marital asset under R.C. 3105.171(A)(3)(a)(ii). *Herrmann v. Herrmann*, 12th Dist. Butler No. CA99-01-006 and CA99-01-011, 2000 WL 1671045; *Hartley v. Hartley*, 2d Dist. Montgomery No. 16668,

1998 WL199637; *Pearson v. Pearson*, 10th Dist. Franklin No. 96APF08-1100, 1997 WL 275496. The rationale for this principle is that 'since sick leave benefits, like deferred bonus payments or pension plan accumulations, are accumulated by the employee during the employment for past services rendered, they are essentially deferred compensation earned during working years.' *Herrmann*, at ¶ 10." *Weller v. Weller*, 11th Dist. Geauga No. 2004-G-2599, 2005-Ohio-6892. The same rationale applies to accumulated vacation time. Accordingly, the value of Robert's accrued sick leave benefits and vacation time will not be distributed until the employee receives that payout from his employer at termination or retirement.

{¶ 14} Thus, the trial court did not abuse its discretion when it found that it would be inequitable to order Robert to pay any portion of his accumulated sick leave benefits or vacation time to Kendra until such time as he retires or is otherwise discharged from his current employment. Therefore, the trial court did not err when it ordered Robert, upon his retirement or discharge, to pay Kendra the sum of $3,514.75, that being her portion of his vacation time benefits which were accrued during the course of their marriage.

{¶ 15} With respect to Robert's sick leave benefits, the trial court ordered that upon his retirement or termination of employment, he would be required to pay Kendra the lesser of the two of one-half of any unused sick leave benefits or $8433.50, which was half of the balance of Robert's accrued sick leave benefits at the time of the parties' divorce. The trial court reasoned that Robert "may, at sometime, incur a serious illness that may require him to expend some of his sick hours. The court finds it would be inequitable to require Robert to pay for sick time hours he no longer has, at the time of his retirement." Because the

benefits at issue are marital assets subject to division and distribution but are in the nature of deferred compensation, we conclude that the trial court did not abuse its discretion by holding that Kendra is not entitled to any distribution from Robert's accrued sick leave benefits and vacation time until the date on which he retires or is discharged from his employment with the City of Union.

{¶ 16} Lastly, Kendra points out that the trial court failed to address Robert's accumulated comp time in its decision issued on July 17, 2012. Evidence was adduced that Robert accumulated approximately fifty-four hours of comp time in 2012 in lieu of receiving payment for overtime hours hour worked. Robert's supervisor, John Applegate, further testified that upon Robert's termination or retirement, he would be paid out for his remaining comp time. Kendra asserts that Robert's comp time is in the nature of sick leave benefits and vacation time, and therefore, a marital asset subject to division and distribution. Kendra, however, fails to support her position with any case law from Ohio or elsewhere.

{¶ 17} When Robert works overtime during the course of his employment, he is awarded comp time that can be used for absences or time off from work. Since comp time is essentially modified credit for overtime work, it falls under the definition of gross income in R.C. 3119.01(C)(7), which is used to determine an individual's income for the purpose of computing his or her child or spousal support obligation. On this record, the court did not abuse its discretion by holding that comp time is not marital property.

{¶ 18} Kendra's first assignment of error is overruled.

{¶ 19} Kendra's second assignment of error is as follows:

{¶ 20} "THE TRIAL COURT ERRED IN COMPUTING CHILD SUPPORT PER

THE CHILD SUPPORT WORKSHEET."

{¶ 21}  In her second assignment, Kendra argues that the trial court erred in its computation of her child support obligation.  Specifically, Kendra points out that the trial court found that she is employed as a teacher at Northmont Schools with a yearly salary of $15,340.00.  Kendra further notes that on the first page of the child support computation worksheet, her salary amount was inexplicably left out.  While the remaining amounts were correctly added to the worksheet, Kendra asserts that the final amount of child support due is incorrect due to the failure of the trial court to properly include her income.  In his merit brief, Robert concedes that Kendra is liable for additional child support because of the failure to include her yearly income in the worksheet computation.

{¶ 22}  While it is rather uncommon for an appellant to point out an error made by the trial court which adversely affects him or her, the trial court nevertheless erred when it failed to include Kendra's income when computing the amount of child support she currently owes, and the error must be corrected.

{¶ 23}  Kendra's second assignment of error is sustained.

{¶ 24}  Kendra's third and final assignment of error is as follows:

{¶ 25}  "THE TRIAL COURT ERRED IN NOT FINDING REAL PROPERTY LOCATED AT 8215 N. MAIN STREET, DAYTON, OHIO AS A MARITAL ASSET."

{¶ 26}  In her third and final assignment, Kendra contends that the trial court erred when it found that the real property located at 8215 N. Main Street in Dayton, Ohio, was not a marital asset, but rather the separate property of Robert for the purposes of the parties' divorce.

{¶ 27} When dividing married parties' assets and liabilities upon divorce, a court must first determine what is marital property and what is not. The trial court must classify property as marital or separate, and must distribute separate property to the owner, where appropriate. R.C. 3105.171(B) and (D). A trial court's classification of property as marital or separate must be supported by competent, credible evidence. *Mays v. Mays,* 2d Dist. Miami No. 2000-CA-54, 2001-Ohio-1450; *Renz v. Renz*, 12th Dist. Clermont No. CA2010-05-034, 2011-Ohio-1634, ¶17.

{¶ 28} Classification of property is governed by R.C. 3105.171. R.C. 3105.171(A)(3)(a) provides, in pertinent part, that marital property includes:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage.

{¶ 29} Under R.C. 3105.171(A)(6)(a), separate property is defined, in pertinent part, as "all real and personal property and any interest in real or personal property that is

found by the court to be any of the following:

> (i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

> (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

> (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage."

{¶ 30} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "[T]he holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital or separate property. Instead, the couple's total circumstances are reviewed." *Nuding v. Nuding*, 3d Dist. Mercer No. 10-97-13, 1998 WL 856923 (Dec. 7, 1998), citing *Mayer v. Mayer*, 110 Ohio App.3d 233, 236, 673 N.E.2d 981 (3d Dist. 1996); R.C. 3105.171(H).

{¶ 31} The burden of proof that specific property is not marital but separate is upon the proponent of the claim to prove by a preponderance of the evidence. *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994); *Snyder v. Snyder*, 2d Dist. Clark No. 2002-CA-6, 2002-Ohio-2781. "Oral testimony as evidence, without corroboration, may or may not satisfy the burden." *Maloney v. Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, ¶ 23 (2d Dist.), citing *Fisher v. Fisher*, 2d Dist. Montgomery No. 20398, 2004-Ohio-7255. "Because traceability presents a question of

fact, we must give deference to the trial court's findings, and the court's decision on the matter will not be reversed as against the manifest weight of the evidence when it is supported by competent credible evidence." *Id.*, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶ 32} "Once it is proven that specific property was the separate property of one of the spouses at, or after, the time of the marriage, the burden shifts to the other spouse to prove, by clear and convincing evidence, that the property, or some interest therein, has been given to the other spouse." *Snyder*, supra, citing *Helton v. Helton*, 114 Ohio App.3d 683, 685, 683 N.E.2d 1157 (2d Dist. 1996).

{¶ 33} The evidence adduced at trial clearly establishes that the real property located at 8215 N. Main Street in Dayton, Ohio, is the separate property of Robert and not a marital asset. Initially, we note that the property was purchased by Robert and his mother, Sandra Bergman, using monies from an inheritance only received when Robert's father, John Bergman, passed away. Testimony adduced at trial also establishes that no marital funds were used to pay the mortgage on the property at issue. Rather, the mortgage payments were funded using monies from the rental of the property. Further, Robert testified that all expenditures made on the rental property came from income derived from the property. Thus, the funds used to finance and maintain the property are clearly traceable to Robert, alone.

{¶ 34} Although Kendra's name is listed on the mortgage, the evidence adduced at trial failed to establish any donative intent on the part of Robert or his mother. Additionally, Kendra testified that she assisted on occasion in cleaning up the property after

it was vacated by tenants, but she did no other work or maintenance with respect to the rental property. Simply put, the evidence presented by Kendra was insufficient to establish that she had any interest in the property at issue, and the trial court correctly found that the rental property was the separate property of Robert and not a marital asset.

{¶ 35} Kendra's final assignment of error is overruled.

{¶ 36} Kendra's second assignment of error having been sustained, this matter is remanded to the trial court for a recalculation of the child support due Robert, making sure to impute Kendra's yearly salary of $15,340.00. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Joseph P. Moore
Keith A. Fricker
Hon. Timothy D. Wood