[Cite as *Umbaugh v. Stinson*, 2020-Ohio-3299.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

|  |  |  |
|---|---|---|
| STEVEN L. UMBAUGH | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-62 |
| | : | |
| | : | Trial Court Case No. 2017-DR-298 |
| v. | : | |
| | : | (Appeal from Common Pleas |
| DONNA J. STINSON | : | Court – Domestic Relations Division) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of June, 2020.

. . . . . . . . . . .

KENT J. DEPOORTER, Atty. Reg. No. 0058487, 7501 Paragon Road, Dayton, Ohio 45459
    Attorney for Plaintiff-Appellee

BRIAN E. LUSARDI, Atty. Reg. No. 0080294, 85 West Main Street, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Donna J. Stinson appeals from the trial court's Final Judgment and Decree of Divorce that awarded $142,000 in disputed cash assets to her former husband, Steven L. Umbaugh. The judgment of the trial court will be affirmed.

**Factual and Procedural Background**

{¶ 2} Stinson and Umbaugh married in Beavercreek, Ohio on August 17, 2007. No children were born of the marriage. On November 10, 2016, the Domestic Relations Division of the Greene County Common Pleas Court issued a Final Judgment and Decree of Legal Separation in Case No. 2016-DR-312, a prior action between Umbaugh and Stinson. Among the separation decree's provisions as to division of the couple's various assets were the following:

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED the Husband [Umbaugh] shall retain his personal 401K; the Husband shall retain his Fifth Third IRA; the Husband shall retain the Marriott Rewards and Amex Points, [and] all remaining joint and personal bank accounts that have not been stated previously, all free and clear of any claim of the Wife [Stinson].

* * * Upon execution of the Final Judgment and Decree of Legal Separation, the Husband shall pay to the Wife the sum of $285,000 as and for her interest in [the marital home] and the sale of previous real estate.

(*See* "Final Judgment and Decree of Legal Separation" in Case No. 2016-DR-312, p. 3).

{¶ 3} On the date of the above judgment, the "remaining joint and personal bank accounts" included a Fifth Third Bank account in Umbaugh's name. Some of the funds in

that account represented a portion of the proceeds from the sale of a house[1] that Stinson allegedly had purchased with premarital assets. Neither party appealed the November 10, 2016 judgment.

{¶ 4} After a subsequent attempt at reconciliation was unsuccessful, Umbaugh filed a complaint for divorce from Stinson on November 3, 2017. The only matter in the divorce action that the parties were not able to resolve by agreement involved a dispute over $142,000 that had been moved through a series of bank accounts. Following a hearing where both parties presented testimony about the disputed funds, the magistrate issued a decision that stated in pertinent part as follows:

> * * * Husband demonstrated at the time of the Legal Separation that he had a Fifth Third bank account solely in his name with proceeds of at least $142,000. The parties attempted to reconcile with one another after the issuance of the Decree of Legal Separation. The parties were seeing a counselor through a church in an attempt to rescue their relationship. As part of their counseling, the parties had disputes regarding monies received by each of them in the Legal Separation. Wife believed that she should have received more money than was awarded to her. In order to assist with the reconciliation, [H]usband withdrew $142,000 from his account at Fifth Third and placed it in a bank account at Chase Bank in both parties' names on June 17, 2017. The parties continued to participate in the private

---

[1] The subject real property was not the parties' marital home, but rather appears to have been one of numerous other properties owned by Stinson, presumably for investment purposes. (See Final Judgment and Decree of Legal Separation, Exh. A (list of property addresses)).

counseling. On August 30, 2017, Wife transferred $142,016.77 from the joint account into an account solely in her name without the knowledge or consent of * * * Husband. Thereafter, the parties' reconciliation terminated. Husband alleges those funds removed from the joint account by Wife should be deemed his separate property as they were awarded to him in the Legal Separation. Wife claims the funds were a gift to her by Husband to reconcile an imbalance in property contained in the Legal Separation.

* * *

* * * Husband has clearly demonstrated that he was awarded the funds in question in the Legal Separation. As such, Husband has clearly traced funds of $142,000 from his personal account into a joint account of the parties. The question before the Court is whether or not Husband intended to give those funds to Wife as a gift of her own separate property or whether or not any of those funds should be treated as marital in nature.

Husband testified that in order to move forward with potential reconciliation, he moved the funds with the intention of keeping them in a joint account. There is no evidence that Husband ever intended those funds to belong solely to Wife. Further, the Court finds that Wife and the marital counselor exerted pressure on Husband to move the funds to a joint account in the first place. Wife believed that the funds were "stolen" from her in the Legal Separation. The Count finds that this is an improper forum for challenging the Decree of Legal Separation. The fact that Wife believed that she was entitled to them in the Legal Separation is belied by the Decree

itself. Wife removed the funds from the joint account in a spiteful act because she believed Husband was having an affair. The Court concludes that Wife has failed to establish that Husband's move [sic] of the funds from his separate account into a joint account satisfied the donative intent required for an inter-vivos spousal gift. Wife never proved that Husband intended her to have those funds solely as her funds, nor did Wife prove that when Husband moved the funds into a joint account that he somehow "transmuted" them into marital property. Therefore, the Court hereby AWARDS Husband the sum o[f] $142,000 to be paid by Wife within thirty (30) days of the filing of the Final Judgment and Decree of Divorce.

{¶ 5} Stinson filed objections and supplemental objections to the magistrate's decision, which objections the trial court overruled. On June 26, 2019, the trial court entered a Final Judgment and Decree of Divorce which awarded Umbaugh the sum of $142,000, to be paid by Stinson within 30 days.

{¶ 6} Stinson appeals from that judgment, setting forth this single assignment of error:

The Trial Court abused its discretion in determining that [Umbaugh] was entitled to the sum of $142,000 because the true origination of the funds at issue belonged to [Stinson], both parties testified that the $142,000 was still in dispute despite already having a Decree of Legal Separation in place, and because [Umbaugh] intended to share the $142,000 with [Stinson] after agreeing to put the disputed money into a new joint savings account with [Stinson].

**Standard of Review and Applicable Law**

{¶ 7} We review property distributions in divorce proceedings for an abuse of discretion. *Payne v. Payne,* 2d Dist. Montgomery No. 27584, 2017-Ohio-8912, ¶ 6, citing *Loughman v. Loughman*, 2d Dist. Montgomery No. 25835, 2014-Ohio-2449, ¶ 22. An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 8} "When dividing married parties' assets and liabilities upon divorce, a court must first determine what is marital property and what is not." *Bergman v. Bergman*, 2d Dist. Montgomery No. 25378, 2013-Ohio-715, ¶ 27. The trial court must classify specific property as marital or separate, and where appropriate, must distribute separate property to the owner. *Id.*, citing R.C. 3105.171(B) and (D). The court's classification must be supported by competent, credible evidence. *Id.*, citing *Mays v. Mays*, 2d Dist. Miami No. 2000-CA-54, 2001 WL 1219345, at *3 (Oct. 12, 2001); *Renz v. Renz,* 12th Dist. Clermont No. CA2010-05-034, 2011-Ohio-1634, ¶ 17.

{¶ 9} The classification of property is governed by R.C. 3105.171. Per R.C. 3105.171(A)(3)(a), "marital property" includes:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the

spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage.

{¶ 10} In contrast, under R.C. 3105.171(A)(6)(a), "separate property" is defined, in pertinent part, as "all real and personal property and any interest in real or personal property that is found by the court to be any of the following:"

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage

* * *

(vii) Any gift of real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

{¶ 11} The proponent of a claim that specific property is separate, not marital, bears the burden to prove that claim by a preponderance of the evidence. *Bergman*, 2d Dist. Montgomery No. 25378, 2013-Ohio-715 at ¶ 31, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994); *Snyder v. Snyder,* 2d Dist. Clark No. 2002-CA-6, 2002 WL 1252835, *3. "Oral testimony as evidence, without corroboration, may or

may not satisfy the burden." *Bergman* at ¶ 31, quoting *Maloney v. Maloney,* 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, ¶ 23 (2d Dist.).

{¶ **12**} "Once it is proven that specific property was the separate property of one of the spouses at, or after, the time of the marriage, the burden shifts to the other spouse to prove, by clear and convincing evidence, that the property, or some interest therein, has been given to the other spouse." *Id.* at ¶ 31, quoting *Snyder at *3*, citing *Helton v. Helton*, 114 Ohio App.3d 683, 685, 683 N.E.2d 1157 (2d Dist.1996).

{¶ **13**} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). As traceability presents a question of fact, we must defer to the trial court on that issue, "and the court's decision on the matter will not be reversed as against the manifest weight of the evidence when it is supported by competent, credible evidence." *Maloney* at ¶ 23, citing *C.E. Morris Co v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶ **14**} Additionally, "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital or separate property. Instead, the couple's total circumstances are reviewed." *Bergman* at ¶ 30, quoting *Nuding v. Nuding*, 3d Dist. Mercer No. 10-97-13, 1998 WL 856923 (Dec. 7, 1998). *See also* R.C. 3105.171(H).

**Analysis**

a. *Whether the $142,000 was Umbaugh's separate property*

{¶ **15**} The trial court did not err by determining that the $142,000 in dispute was Umbaugh's separate property. The Final Judgment and Decree of Legal Separation in

Case No. 2016-DR-312 specifically awarded Umbaugh the bank account in which those funds were held at that time. Further, during a hearing discussion of the $142,000 at issue, Stinson admitted such, as recorded in the following exchange:

[STINSON]: * * * we did a legal separation, so.

[UMBAUGH'S COUNSEL]: And in the legal separation he [Umbaugh] was granted the $142,000, is that correct?

[STINSON]: That's correct.

[UMBAUGH'S COUNSEL]: Okay. And then –

[STINSON]: Well, he wasn't – he wasn't granted. He was granted, it was a stipulation over the $142,000. He was granted ban[k] accounts, all of the bank accounts that were in mine [sic] and his name. He was granted that in the legal separation.

[UMBAUGH'S COUNSEL]: You agree --

[STINSON]: But then he took it out of there.

[UMBAUGH'S COUNSEL]: You agree in the legal separation he was granted that money, correct?

[STINSON]: That's correct.

(*See* Tr. of 10/26/18 hearing, p. 40).

{¶ 16} Stinson is mistaken in now arguing that the trial court erred by failing to trace the $142,000 back to the sale of real estate purchased with her premarital assets, in order to determine that such amount originally was her separate property. One way in which property may become one spouse's "separate property" for purposes of distribution in a divorce is through "[a]ny gift of real or personal property or of an interest in real or personal

property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii). Regardless of whether the $142,000 originally belonged to Stinson – an issue that we need not and do not address – those funds became Umbaugh's separate property, whether by "stipulation" or otherwise, through the terms of the Final Judgment and Decree of Legal Separation.

{¶ 17} "Res judicata 'prevent[s] relitigation of issues already decided by a court or matters that should have been brought as part of a previous action.' " *Ahmad v. Ahmad*, 2d Dist. Montgomery No. 23740, 2010-Ohio-5635, ¶ 22, quoting *Machnics v. Sloe,* 11th Dist. Geauga No. 2007-G-2784, 2008-Ohio-1133, ¶ 68. " '[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.' " *Id.* "As a general rule, the doctrine of res judicata bars the relitigation of issues involved in a decree of legal separation * * *." *Condit v. Condit*, 190 Ohio App.3d 634, 2010-Ohio-5202, 943 N.E.2d 1041, ¶ 8 (1st Dist.).

{¶ 18} If Stinson wished to dispute the legal separation decree's classification of the subject $142,000 as Umbaugh's separate property, the appropriate means of doing so was through an appeal of the November 10, 2016 judgment in Case No. 2016-DR-312. Because Stinson failed to timely pursue such an appeal, that matter now is res judicata. Stinson's assignment of error based upon the original source of the $142,000 in dispute is not well taken.

b. *Whether Umbaugh subsequently "gifted" the $142,000 to Stinson*

{¶ 19} Stinson also argues that the trial court erred by failing to find that Umbaugh

intended to share the $142,000 with her after the legal separation decree was in place. "[S]pouses can change separate property to marital property based on actions during the marriage." *Helton*, 114 Ohio App.3d 683, 685, 683 N.E.2d 1157. "The most commonly recognized method for effecting this change is through an *inter vivos* gift of the property from the donor spouse to the donee spouse." (Italics sic.) *Id.*

{¶ 20} "The essential elements of an *inter vivos* gift are '(1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there, and (2) in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion, and control over it.' " *Id.* at 685-686, quoting *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21, 4 N.E.2d 917 (1936), paragraph one of the syllabus. "The donee has the burden of showing by clear and convincing evidence that the donor made an *inter vivos* gift." *Id.* at 686; *accord Snyder v. Snyder*, 2d Dist. Clark No. 2002-CA-6, 2002 WL 1252835, *3 (June 7, 2002) ("Once it is proven that specific property was the separate property of one of the spouses at, or after, the time of the marriage, the burden shifts to the other spouse to prove, by clear and convincing evidence, that the property, or some interest therein, has been given to the other spouse.").

{¶ 21} Competent, credible evidence supports the trial court's determination that Umbaugh did not intend to make an inter vivos gift to Stinson by placing the $142,000 in a joint bank account sometime after the legal separation decree had awarded those sums to him. According to Stinson's hearing testimony, beginning in or around February of 2017, she and Umbaugh attempted to reconcile their marriage. (*See* Tr. p. 35). The

couple's marriage counselor reportedly advised Umbaugh that one obstacle to reconciliation was Stinson's perception that Umbaugh improperly kept (i.e., "stole") $142,000 from a real property sale that should have gone to Stinson. (Tr. p. 21, 29). On June 19, 2017, Umbaugh withdrew $142,000 from his Fifth Third account and deposited that amount into a new Chase account titled to him and Stinson jointly. According to Umbaugh, "[t]he intent was to put the money in the [joint] account per the Christian counselor that we were going to trying [sic] to resolve the marital differences." (Tr. p. 21). He denied any intent to make a gift to Stinson (id.); rather, he said those funds were moved at Stinson's insistence, "with the stipulation that that money would never be touched." (Tr. p. 22).

{¶ 22} Umbaugh further testified as follows:

I set it [the $142,000 placed in the joint account] aside for one specific purpose. Even though I didn't necessarily agree with what the counselor had said, if putting that money aside * * * was going to make her [Stinson] ability [sic] to unblock – to unblock the relationship so we could work on our marriage[,] * * * I was willing to put that aside * * *.

(Tr. p. 33).

{¶ 23} On August 30, 2017, the entire $142,016.77[2] balance of the joint Chase account was transferred by Stinson into a different Chase account bearing her name only. On October 22, 2017, Stinson transferred $142,001.87 from the second Chase account to a third account at Chase, again in her name alone. Stinson testified that she understood the $142,000 deposited by Umbaugh into the joint Chase account to be a gift to her "from

---

[2] That sum included the original $142,000 deposit plus interest.

the funds that he had stolen that caused all this whole mess." (Tr. p. 36). She later specified, however, that she considered the $142,000 to be marital funds and was requesting that only half of that amount be awarded to her. (Tr. p. 38-39).

{¶ 24} In divorce actions as in other actions, appellate courts generally defer to the trial court's assessment of credibility. *See Edwards v. Edwards*, 2d Dist. Montgomery No. 25309, 2013-Ohio-117, ¶ 14. "The 'rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *In re J.Y.*, 2d Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1980).

{¶ 25} We have no basis to disrupt the trial court's finding that Umbaugh did not intend to make a gift to Umbaugh of any portion of the $142,000 by placing that amount into a joint bank account only in an attempt to facilitate reconciliation. Because the trial court did not abuse its discretion, there was no error.

*c. Whether an award to Stinson was warranted by Umbaugh's "misconduct"*

{¶ 26} Finally, Stinson contends that the trial court erred by failing to consider whether some portion of the disputed $142,000 should have been awarded to her due to her testimony about Umbaugh's "stealing or at least improperly acquiring" proceeds from the sale of a home allegedly purchased with her premarital assets. As we determined above, the issue of classifying those funds as marital or separate property is res judicata.[3]

---

[3] Notably, while the legal separation decree awarded Umbaugh the bank account containing the disputed funds, it also ordered him to pay Stinson "$285,000 as and for her interest in [the marital home] *and the sale of previous real estate.*" (Emphasis added.)

Further, Stinson's hearing testimony was insufficient to establish that Umbaugh engaged in financial misconduct, and the trial court acted within the scope of its discretion in declining to award any amount to Stinson on that basis.

{¶ 27} The assignment of error is overruled.

## Conclusion

{¶ 28} For the foregoing reasons, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Kent J. Depoorter
Brian E. Lusardi
Hon. Steven L. Hurley

---

(Final Judgment and Decree of Legal Separation, p. 3). Accordingly, the prior judgment contemplated that Umbaugh had retained some proceeds from the prior sale and required him to repay Stinson for that portion determined to belong to her.